**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| STEPHANIE NUGEN, Individually and For Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ASCENSION HEALTH,<br><br>    Defendant. | Case No. 7:25-cv-00294-DC-RCG<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

**UNOPPOSED MOTION TO APPROVE FLSA
SETTLEMENT AGREEMENT AND DISMISS WITH PREJUDICE**

Plaintiff Stephanie Nugen ("Nugen" or "Plaintiff"), on behalf of herself and the Putative Collective Members[1] (collectively, with Nugen "Plaintiffs"), files this Unopposed Motion for Approval of Settlement Agreement and Release ("Settlement Agreement") and in support would show as follows:

**1. Summary**

Plaintiff, on behalf of herself and the Putative Collective Members, and Defendant have reached a settlement with respect to this Fair Labor Standards Act ("FLSA") case, as memorialized in the Settlement Agreement filed attached as Exhibit 1. The Settlement Agreement represents the culmination of investigation, exchange of discovery, extensive litigation, and negotiations relating to the above-captioned lawsuit and a related action pending in the Eastern District of Missouri. *See Jennifer McGuire, Individually and for Others Similarly Situated v. Ascension Health*, Case No. 1:23-cv-01785, pending in the Eastern District of Missouri, St. Louis Division (the "Related Action"). If approved, the Settlement Agreement will provide meaningful relief to Plaintiffs.

---

[1] "Putative Collective Members" means those individuals who opt-in to this action after receiving notice as provided in the Parties' Settlement Agreement.

This Settlement Agreement is the compromise of disputed claims and does not constitute an admission by Ascension of any violation of any federal, state, or local statute or regulation; of any violation of any of Plaintiffs' rights; or of any duty owed by Ascension to Plaintiffs. Ascension expressly denies Plaintiffs' claims and disputes Plaintiffs' entitlement to recover any damages, and disagrees with Plaintiffs as to, for example and without limitation: the number of hours Plaintiffs actually worked; whether Plaintiffs are similarly situated; whether Defendant's alleged FLSA violations were made in good faith and on reasonable grounds; and whether Defendant's alleged FLSA violations were willful.

The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation. For these reasons, the Parties jointly request the Court approve the Parties' Settlement Agreement and, upon the expiration of the agreed-upon time period for Putative Collective Members to opt-in to this action and settlement, allow the Parties an opportunity to file all consent forms submitted by Putative Collective Members before dismissing this action and the claims of Plaintiffs and all Putative Collective Members who opt-in with prejudice.

**2. Introduction and Background**

On June 24, 2025, Plaintiff filed this collective action lawsuit on behalf of herself and a putative collective of hourly, non-exempt patient-facing Ascension employees who received an automatic meal deduction during the past three years (the "Putative Collective Members"). *See generally* Doc. 1. Plaintiff alleges Ascension failed to pay her and the Putative Collective Members for all hours worked via its (1) meal deduction policy, by which Ascension automatically deducted 30 minutes per day from its employees' time worked, despite requiring them to remain alert and on-duty; and (2) rounding policy, wherein Ascension rounded its employees' recorded time to the nearest quarter-hour. *Id.* Plaintiff's FLSA claims in this lawsuit are nearly identical to the FLSA claims in the Related Action,

which Ascension has been litigating for over a year. Ascension denies Plaintiff's allegations, as well as the similar allegations of the Other Plaintiffs in the Related Action ("Other Plaintiffs"), and raised several affirmative defenses in the Related Action, including that Ascension acted in good faith and its actions were not willful. Ascension denies Plaintiffs are entitled to any recovery for any claim asserted or that could have been asserted in this lawsuit or the Related Action.

After extensive litigation of the Related Action, the Parties agreed to stay, toll, and mediate on a nationwide basis. Ascension provided extensive, detailed time records and payroll information for each Opt-In Plaintiff to the Related Action and Putative Collective Members to the instant action. Class Counsel used data provided by Ascension to determine each Putative Collective Members' alleged damages, if any. On August 6, 2024, the Parties attended a full-day mediation with experienced wage-and-hour mediator Michael Russell. Unfortunately, the mediation was unsuccessful; however, the Parties continued to engage in settlement negotiations. On November 4, 2024, the Parties attended their second in-person mediation with Dennis Clifford, who specializes in wage and hour litigation. After extensive arms-length negotiations, a full- day mediation, and given the respective costs of litigation, the potential for appeal, and the inherent risks of litigation, the Parties reached an agreement in principle that they believe is fair and reasonable under the circumstances. The Parties then spent considerable time negotiating the terms of their confidential Settlement Agreement, which was accepted by Ascension and Plaintiffs by executing the Settlement Agreement. The Parties' Settlement Agreement is attached as Exhibit 1. Pursuant to the Parties' Settlement Agreement, they agreed to settle the Related Action on behalf of all Opt-In Plaintiffs, and to settle the instant action on behalf of all absent Putative Collective members.

Over the life of the Related Action, the Parties conducted extensive discovery, filed multiple pleadings with the court, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted. Based upon the Parties' investigation, legal evaluation,

and assessment of the contested legal and factual issues involved in this action and the Related Action, including the Parties' understanding of the uncertainties of continued litigation and the relative benefits to be conferred upon Plaintiffs here pursuant to the Settlement Agreement, the Parties concluded that this settlement is fair, reasonable, adequate, and in the best interests of everyone involved.

Without any admission of liability, Ascension desires to compromise and settle this action, the Related Action, and all claims by Plaintiff, the Other Plaintiffs, and the Putative Collective Members pertaining to the payment of wages and overtime during the FLSA Covered Period (as defined in the Settlement Agreement) including, but not limited to, claims under the FLSA, or any other federal, state, or local law for alleged unpaid overtime wages, underpaid wages, unpaid wages, liquidated damages or any other damages, penalties, restitution, attorneys' fees, costs, and interest.

As shown through this Motion, the Parties' proposed settlement is the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally exchanging information, and engaging in substantial negotiations over many months. The terms of the Settlement Agreement are reasonable and appropriate and fair to all Parties involved. Accordingly, Plaintiff asks the Court to approve their Settlement Agreement and settlement notice form, Consent to Join and Release Form, and procedures for sending notice.

   **3. Settlement Terms**

As set forth in detail in their Settlement Agreement, the Parties reached a settlement on behalf of Plaintiff and the Putative Collective Members. The Parties agreed to a Gross Fund ($16,435,000.00) encompassing settlement payments to Plaintiff and the Potential Plaintiffs, Class Counsel's Fee Amount (as defined in the Settlement Agreement), Class Counsel's Attorney Costs and Expenses (as defined in the Settlement Agreement), and Service Payment to Plaintiff (as defined in the Settlement Agreement).

Pursuant to their Settlement Agreement, the Parties agreed to send Plaintiff and each Putative Collective Member notice of the settlement (attached as Exhibit A to the Settlement Agreement) and to provide them an opportunity to join the settlement, opt-into this case by filing of their consent form, and receive their Settlement Award. The Settlement Award is each Plaintiff and Putative Collective Member's pro rata share of the Net Fund (as defined in the Settlement Agreement). To join the settlement and receive a Settlement Award, the Parties agreed the Putative Collective Members must complete and execute an agreed upon Consent to Release and Join Form (as outlined in the Settlement Agreement and attached as Exhibit A to the Settlement Agreement) and return the same to the Settlement Administrator within the Opt-In Period.

Plaintiff's and Putative Collective Member's pro rata Settlement Awards are based on the number of weeks they worked in a qualifying position during the FLSA Covered Period. To calculate the Settlement Award, the Parties assign the Putative Collective Members one point for each workweek worked. Then, to calculate their proportionate shares of the Net Fund, the Parties:

(1) Add all points for Plaintiff and the Putative Collective Members to obtain the "Total Denominator"; then

(2) Divide the Plaintiff's and Putative Collective Members' individual points by the Total Denominator to obtain each Members' "Portion of the Net Fund"; then

(3) Multiply Plaintiff's and Putative Collective Members' Portion of the Net Fund by the total amount of the Net Fund to determine the amount of payment to Plaintiff and the Putative Collective Members (their "Individual Payment").

The sum of the Individual Payments for Plaintiff and the Putative Collective Members will equal the Net Fund. Plaintiff and the Putative Collective Members may contact the Settlement Administrator to be advised of his/her respective Individual Payment. Defendant has consented to this methodology. In exchange for the Settlement Award, Plaintiff and the Putative Collective

5

Members who join the settlement (the "Qualified Claimants") are each releasing any and all wage and hour claims against Ascension from the start of the FLSA Covered Period through the date they execute their Consent to Join and Release Form.

### A. The Parties have entered into a formal Settlement Agreement.

The Settlement Agreement attached to this Motion has already been agreed upon and executed by the Parties. *See* Ex. 1. Under the Settlement Agreement, one-half of each Plaintiffs' individual settlement amount will be characterized as wages and the other half as liquidated damages and interest for tax withholding and reporting purposes. The settlement amounts have been allocated to each Plaintiff based upon their weeks worked within the agreed FLSA Covered Period. In addition to the settlement payment, Ascension will pay the employer's portion of any payroll taxes due. Plaintiffs will release their wage and hour claims only if they return a Consent to Join and Release Form. Plaintiffs also ask, consistent with the Parties' Settlement Agreement, that the Court appoint CPT Group, Inc. ("CPT") as the third-party Settlement Administrator. Further, Plaintiffs seek the Court's approval of the following payments: (i) Service Payment of $10,000 to Plaintiff Nugen; (ii) Attorneys' Fees equal to 40% of the Settlement; (iii) reasonable litigation costs equal to $24,647.01; and (iv) settlement administration fees to the Settlement Administrator in an amount not to exceed $120,000.

4. **Argument & Authorities**

### A. The settlement represents a reasonable compromise of this litigation.

This Settlement Agreement provides Plaintiffs with a substantial recovery for their alleged unpaid overtime wages, which is commensurate with the disputed nature of Plaintiffs' claims. Ascension disputes Plaintiffs' claims as to both liability and amount of damages.

All Parties are represented by experienced counsel. Class Counsel (as defined in the Settlement Agreement) has served as lead counsel in numerous large-scale wage and hour class/collective actions. *See, e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's

6

grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs); Exhibit 2, Declaration of Andrew Dunlap at ¶¶ 3-4; 12, 28-29.

The Parties and their respective counsel agree the Settlement Agreement is a fair and reasonable compromise of the claims alleged by Plaintiffs in light of the procedural posture of the case and the Related Action, the litigation risks, and the litigation costs to all Parties. *Id.* at ¶ 34. The Parties have engaged in arm's-length and extended settlement negotiations. *Id.* at ¶ 30. Because the Settlement Agreement is a fair and reasonable compromise and adequately compensates the participants for the unpaid overtime hours alleged by Plaintiffs, the Parties seek entry of the submitted Order Approving Settlement. The Settlement Agreement is a fair and reasonable resolution of a bona fide dispute.

The Fifth Circuit has set out six factors for evaluating whether a settlement agreement should be approved: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

Where a settlement occurs in the context of a lawsuit, courts typically regard this "adversarial nature … to be an adequate indicator of the fairness of the settlement." *Villeda v. Landry's Restaurants, Inc.*, No. CIV.A H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009); *Lynn's Food Stores, Inc. v. United States.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982). The Settlement Agreement was negotiated by experienced attorneys; it reflects an arms' length compromise of the disputed claims. *See Smith v. M-I,*

7

*LLC*, No. 5-17-CV-00788-FB-RBF, 2019 WL 2620734, at *1–2 (W.D. Tex. Feb. 26, 2019) ("[T]he Court must keep in mind the 'strong presumption' in favor of finding a settlement fair.") (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008)). "A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007). In determining whether there is evidence of fraud or collusion, courts often begin by considering whether the parties are represented by experienced counsel. *See Garza v. Sporting Goods Properties, Inc.*, CIV. A. SA-93-CA-108, 1996 WL 56247, at *12 (W.D. Tex. Feb. 6, 1996). The Court should also consider the parties' representations of arm's length negotiations, particularly when they took place before an experienced mediator. *In re OCA, Inc. Sec. & Derivative Litig.*, 72 Fed. R. Serv. 3d 1060 (E.D. La. 2009).

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, CIV A. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014). "This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA, and under …state laws…" governing the payment of overtime. *Id*. "Resolving the procedural issues, the merits, and damages [is] risky, costly, and time consuming." *Id*.

There are well-known examples of wage and hour cases lasting more than a decade. *See, e.g., Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 50, 325 P.3d 916, 946 (2014) (reversing certification following bench trial ruling in favor of a class of plaintiffs and stating "a new trial will be required for both liability and restitution, and the trial court may entertain a new class certification motion"). Indeed, Class Counsel have been involved in several wages and hour cases that took years to resolve, even after successful determinations – such as a jury verdict in favor of the plaintiffs – on the merits. *See, e.g., Roussell*, 2011 WL 4067171 (more than 6 years of litigation, including more than 2 ½ years of litigation after a jury verdict in plaintiffs' favor); *Belt*, 444 F.3d 403 (nearly 2 years of litigation after

summary judgment rendered in favor of plaintiffs). Of course, this Court also has first-hand knowledge of just how difficult and unpredictable wage and hour litigation can be.

First, the Settlement Agreement is a product of extensive litigation involving several related lawsuits throughout the nation, i.e., the Related Actions. *See Weinmann v. Contract Land Staff, LLC*, No. 2-22-cv-01140, Doc. 1 (W.D. Pa.); *Sexton v. Contract Land Staff, LLC*, No. 2:23-cv-01968, Doc. 1 (S.D. Ohio); *Minogue v. Contract Land Staff, LLC*, No. 1:23-cv-02729, Doc. 1 (N.D. Ga.); *Crager v. Contract Land Staff, LLC*, No. 8:23-cv-01357, Doc. 1 (M.D. Fla.). Throughout the course of the Related Action, the Parties engaged in two mediations and extended negotiations with significant follow-up work. Ex. 2 at ¶ 23. There was no fraud or collusion by any participant. *Id.* at ¶ 31.

Further, as detailed further below regarding factors 2 through 5, this case (and the Related Action) was settled after extensive work by the Parties and their counsel. Prior to settlement, the Parties engaged in extensive formal and informal discovery; review of thousands of pages of documents; and worked together to resolve various complex, disputed issues, such as issues regarding damage calculations, misclassification, salary basis issues, and exemption defenses. Ex. 2 at ¶¶ 19-22. And, if the case were not settled, there would be extensive work to come, including additional lawsuits in other jurisdictions, dispositive motions, additional depositions, associated discovery disputes, certification briefing, and questions regarding applicability of good faith and willfulness, conditional certification, and decertification under the FLSA. *Id.* at ¶ 26. And, this would all occur in multiple cases in different jurisdictions throughout the country. So clearly, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiff in particular) recognized that this Settlement Agreement represented a compromise of the range and certainty of their damages.

The Parties also had a bona fide good faith dispute over the potential damages and amount of overtime hours worked, if any. After exchanging payroll data, the Parties exchanged damage

9

calculations, and other information. *Id.* at ¶ 22. The Parties had vastly different views of the potential amount of damages. They specifically had factual disputes over whether Ascension paid Plaintiff and the Putative Collective Members for all hours worked, how many hours Plaintiffs worked, total remuneration to be included in the overtime compensation, and whether the two or three year statute of limitations should apply to Plaintiffs' claims. Resolving these factual disputes would have required extensive work and detailed and additional costly discovery. Both Parties had considerable risk, even assuming Plaintiffs could have established liability, Plaintiffs risked recovering nothing to minimal back pay and Defendant risked a significant judgment, including attorneys' fees and liquidated damages.

Finally, the belief that this settlement is in the best interest of Plaintiffs is an opinion shared by Class Counsel and the class representative. *Id.* at ¶ 36.

### B. Attorney fees and litigation expenses are reasonable.

Class Counsel's attorneys' fees are part of the bargained for settlement. The Parties agreed to set Class Counsel's fees at 40% of the Gross Fund (as defined in the Settlement Agreement). This is the agreement the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement).

Supreme Court precedent not only permits, but also endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). FLSA authority suggests that, when they do under circumstances that exist here, that should end the matter. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). The Parties reached the agreed upon fee, and to the extent approval is necessary, it should be given here.

In FLSA cases such as this, the Fifth Circuit has approved contingency fees in the range of 35% to 40%. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001); *Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) (approving 40% fee in FLSA settlement); *Griffin v. Hunt Guillot & Associates, LLC*, 3:20-cv-01189, at ECF No. 66 (W.D. La., March 3, 2022) (same); *Whitlow v. Crescent Consulting, LLC*, No. 5:16-cv-01330, at ECF No. 189 (W.D. Okla. April 1, 2019) (same); *Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) (same); *Brite v. Great Plains Analytical Services, Inc.*, No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) (same); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (same); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%).

In evaluating a contingency fee award, the Court may look at the factors set forth in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974). The *Johnson* factors include the following of import in this case: (1) the time and labor required; (2) the novelty and difficulty of the questions posed; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee

11

is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; and (10) awards in similar cases.

Plaintiffs request the Court approve the attorneys' fees of Class Counsel as stated in the Settlement Agreement. Such fees are justified as a matter of contract, but especially in this case where Class Counsel worked diligently on a contingency basis. *See Singer v. Wells Fargo Bank, N.A.*, No. 5:19-CV-00679, 2020 WL 10056302, at *2 (W.D. Tex. July 14, 2020) (approving 40% contingency fee in an FLSA collective action).

Regarding the time and efforts required of Class Counsel (factors 1 and 7), the Parties engaged in extensive disputes and negotiations regarding Court-authorized notice, discovery, damage models, damage calculations, and hours worked by Plaintiffs. This represents a significant devotion of time to reach resolution of this case and the Related Actions, and to negotiate and memorialize the same. Further, this case (when considering the Related Action) has been pending for roughly a year and a half.

Second, the separately-negotiated, agreed contingency fee (factors 5, 6, and 10) in the Professional Services Agreement between Plaintiffs and Class Counsel provides for a contingency fee of 40% of the Gross Fund, which is in line with Fifth Circuit precedent. *See supra* at *7. Nugen was aware of, and agreed to, the contingency fee nature of the relationship. *Id.* at ¶ 38. Finally, the FLSA mandates payment of attorneys' fees to prevailing plaintiffs (even though, by virtue of the Settlement Agreement, Plaintiffs are not considered prevailing parties). *See Ellis v. Viking Enterprises, Inc.*, 5:18-CV-00772, 2019 WL 6271784, at *8 (W.D. Tex. Nov. 22, 2019).

Next, Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g.*, *Hughes*, 878 F.3d at 184; *Roussell*, 2011 WL 4067171 at *1 (affirming jury verdict in FLSA collective action); *Belt*, 444 F.3d 403 (affirming summary

judgment in favor of a nationwide class of FLSA plaintiffs). FLSA collective action cases such as this are the main focus of Class Counsel's docket. Although Class Counsel is based in Texas, both BRUCKNER BURCH PLLC and JOSEPHSON DUNLAP LLP have a national docket of FLSA cases, with litigation across the United States, not only in Texas, but also in Arizona, California, Colorado, Illinois, Louisiana, New Mexico, Ohio, Oklahoma, Pennsylvania, South Dakota, Utah, Virginia, West Virginia, Delaware, Georgia, New York, Washington, Nebraska, Massachusetts, and elsewhere. Ex. 2 at ¶ 28. In recent years, Class Counsel's joint docket has carried around or over 250 cases involving collective action claims for workers.

Class Counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. Class Counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of cases such as this. *Id.* at ¶ 27. Indeed, as one court expressly noted regarding Class Counsel, "the firms involved in this case on the Plaintiffs' side [including BRUCKNER BURCH] are among the most experienced and best regarded in this specialized practice area." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015); *see also Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-CV-1080-WSS-LPL, 2021 WL 8342845, at *1 (W.D. Pa. Dec. 17, 2021) (noting Bruckner Burch and Josephson Dunlap are "well-versed in … wage-and-hour law"); *Horton v. Right Turn Supply, LLC*, Case No. 2:19-cv-01271-NR at *8 (W.D. PA, Apr. 23, 2020) (Josephson Dunlap "conducted themselves professionally, demonstrated deep knowledge of wage-and-hour law, and have been diligent and responsive to the Court's orders"); *Girault v. Supersol 661 Amsterdam, LLC*, No. 1:11 CIV 6835 PAE, 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012) (Bruckner Burch's lawyers "are experienced and well-qualified employment lawyers"); *Diaz v. Scores Holding Co., Inc.,* No. 07 CIV. 8718 THK, 2011 WL 6399468, at *5 (S.D.N.Y. July 11, 2011) (referring to Bruckner Burch as "experienced employment

13

lawyers with good reputations among the employment law bar"); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Bruckner Burch's attorneys "are highly experienced attorneys and have acted as class counsel in similar [wage and hour] actions in federal and state courts"); *Davis v. Footbridge Eng'g Servs., LLC*, No. 09CV11133-NG, 2011 WL 3678928, at *4 (D. Mass. Aug. 22, 2011) (noting Richard J. (Rex) Burch's success in the field of wage and hour litigation). In short, Class Counsel's "skill, knowledge, reputation, and experience are well-recognized in FLSA cases such as this one." *See Cormier v. Turnkey Cleaning Servs. LLC*, No. 6:15-CV-2076, 2018 WL 5288824, at *4 (W.D. La. Oct. 22, 2018). Further, Class Counsel's acceptance of this case (factor 4), and the considerable time that it has taken to work this case, has precluded time that they could have spent pursuing other matters.

"The most critical factor in determining a fee award is the degree of success obtained" (factor 8). *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because Ascension vigorously contested Plaintiffs' claims and denied that Nugen and the Putative Collective Members were improperly paid, underpaid, or that any alleged back wages are owed. Yet, as the Settlement Agreement reflects, Putative Collective Members who opt-in to this action and settlement will each receive a reasonable and fair settlement payment. For these reasons, Nugen believes a fee of 40% exclusive of costs is in line with the amount of fees approved in FLSA settlements and should be approved in this case.

For these reasons, Plaintiffs believe a fee equal to 40% of the Gross Fund is reasonable and necessary in this case. Class Counsel also seeks reimbursement of their advanced litigation expenses as outlined in the Settlement Agreement.

### C. The Court should approve the Service Payment.

Nugen took a substantial risk in bringing the claims relating to Defendant's alleged wage and hour violations. In doing so, Plaintiff (like all FLSA litigants) was concerned she could face potential

14

retaliation from prospective employers and Defendant. Moreover, Nugen expended significant effort and time in educating Class Counsel regarding Plaintiff's job experiences and Ascension's policies and procedures. She also participated in telephone conferences with Class Counsel and their staff over the course of the litigation.

Because Nugen invested significant personal effort in representing the interests of the Putative Collective Members and worked diligently to ensure Plaintiffs could recover the wages they are allegedly due, the proposed $10,000 Service Payment agreed to by the Parties is reasonable to compensate her.

5. **Conclusion**

Plaintiff and Class Counsel obtained a successful recovery on behalf of the Putative Collective Members. The Settlement Agreement reached will provide considerable relief to all Putative Collective Members who opt-in to this action and the settlement. The Court should approve the Settlement Agreement reached by the Parties, approve the method and forms to facilitate the settlement as outlined in the Settlement Agreement and/or attached as exhibits to the Settlement Agreement, approve Class Counsel's attorneys' fees and costs, approve CPT as the Settlement Administrator, and approve the Service Payment. Upon the approval of the Settlement Agreement, the Court should dismiss this lawsuit with prejudice.

Dated: September 22, 2025

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
    Michael A. Josephson*
    Andrew W. Dunlap*
    Alyssa J. White
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Phone: 713-352-1100
    Fax: 713-352-3300
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    awhite@mybackwages.com

    Richard J. (Rex) Burch*
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    Phone: 713-877-8788
    Fax: 713-877-8065
    rburch@brucknerburch.com
    *Pro hac vice applications forthcoming*

    William C. (Clif) Alexander*
    Austin W. Anderson*
    **ANDERSON ALEXANDER, PLLC**
    101 N. Shoreline Blvd., Suite 610
    Corpus Christi, Texas 78401
    361-452-1279 – Telephone
    361-452-1284 – Facsimile
    clif@a2xlaw.com
    austin@a2xlaw.com

    **ATTORNEYS FOR NUGEN AND THE PUTATIVE CLASS MEMBERS**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served via electronic service on September 22, 2025, on all counsel of record.

    /s/ *Andrew W. Dunlap*
    Andrew W. Dunlap