# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between Ascension Health ("Ascension" or "Defendant"), on the one hand, and Stephanie Nugen ("Named Plaintiff"), individually and on behalf of a collective group of similarly situated individuals, including all Putative Collective Members (as defined below), on the other hand. Collectively, Ascension and the Named Plaintiff are the "Settling Parties," and each one individually is a "Settling Party."

The Settling Parties agree to do all things reasonably necessary and appropriate to obtain approval of this Agreement by the United States District Court for the District of Texas, Midland Division (the "Court") in which a lawsuit styled *Stephanie Nugen, Individually and for Others Similarly Situated, v. Ascension Health* (Case No. 7:25-cv-00294) was filed (hereafter, the "Litigation"). This Agreement is contingent upon the Court approving this Agreement and dismissing with prejudice the Litigation and the claims settled via this Agreement. This Agreement is entered into voluntarily by the Settling Parties for settlement purposes only.

## RECITALS

WHEREAS, "Plaintiffs' Counsel" or "Class Counsel" means Josephson Dunlap LLP, and "Ascension's Counsel" means Jackson Lewis, P.C. (all of whom collectively are "Counsel for the Settling Parties");

WHEREAS, the term "Putative Collective Members" in this Agreement shall mean the approximately 42,000 individuals (not including Named Plaintiff) who are or were employed as a non-exempt patient-facing employee by an Ascension-affiliated hospital at any time between November 9, 2022 and November 9, 2024 (the "FLSA Covered Period").

## I.     CONSENT TO COURT-FACILITATED NOTICE

**A.**     Putative Collective Members. For settlement purposes only, the Settling Parties agree that Named Plaintiff and the Putative Collective Members are similarly situated within the meaning of 29 U.S.C. § 216(b) for purposes of the claims asserted in the Litigation under the FLSA, and the Settling Parties consent to Court-facilitated notice to the Putative Collective Members.

**B.**     The Settling Parties shall cooperate and present to the Court such information as may be reasonably necessary and/or requested by the Court in connection with the Court approving this Agreement and notice to the Putative Collective Members.

## II.    SETTLEMENT APPROVAL PROCEDURE

**A.**     Within twenty-one (21) days[1] after full execution of this Agreement, Named Plaintiff shall file in the Litigation an unopposed motion for Court approval of the Agreement and dismissal with prejudice of the Litigation ("Approval Motion"). The Approval Motion shall attach the following for the Court's review: this Agreement; the Notice of Settlement of Collective Action Lawsuit and Opportunity to Make a Claim, and Consent to Join and Release Form (collectively, the "Notice Packet"), which is attached to this Agreement as Exhibit A, advising the Putative Collective

---

[1] All references to "days" throughout this document refer to calendar days.

Members of the material terms and provisions of this settlement, the procedure for submitting Consent to Join and Release Forms, and their rights with respect to this settlement; and an agreed-upon proposed order ("Approval Order").

 **B.** The Settling Parties agree to do all things reasonably necessary and appropriate to obtain the Court's approval of this Agreement. This Agreement is contingent on approval by the Court and is entered into voluntarily by the Settling Parties.

## III. <u>MODE, CALCULATION, AND TIMING OF PAYMENT OF CLAIMS</u>

 **A.** <u>Notice of Claims</u>

 1. Within seven (7) days of the Court's Approval Order becoming a final, non-appealable order, Ascension shall provide the Settlement Claims Administrator ("Administrator") an Excel chart listing, for each Named Plaintiff and Putative Collective Member: (a) their name, (b) employee identification number, (c) last known mailing address, and (d) last known personal email address, if available in Ascension's electronic employment records, as all such information exists in Ascension's electronic employment records (the "Excel Chart"). The Excel Chart shall also include a chart of Named Plaintiff's and each Putative Collective Members' total number of workweeks worked in a qualifying position between November 9, 2022 and November 9, 2024, based upon Ascension's business records.

 2. At the same time, Ascension shall provide Plaintiffs' Counsel an identical version of the Excel Chart provided to the Administrator; however, Ascension may remove the Putative Collective Member's names. Plaintiffs' Counsel agree that they shall not use the Putative Collective Members' information described in this paragraph for any purpose other than to confirm the identity of a Putative Collective Member independently contacts Plaintiffs' Counsel regarding this Agreement,. Plaintiffs' Counsel agree that they shall not disseminate or share the Putative Collective Members' information with anyone other than employees of Plaintiffs' Counsel who have a need to access the information to confirm the identity of a Putative Collective Member who independently contacts Plaintiffs' Counsel regarding this Agreement. Plaintiffs' Counsel agree that they shall not independently contact Putative Collective Members who did not first initiate contact with Plaintiffs' Counsel. Plaintiffs' Counsel agree that they shall not solicit Putative Collective Members to file or initiate any claims against Defendant or any Releasees, and instead Plaintiffs' Counsel shall, upon request from a Putative Collective Member, provide guidance to Putative Collective Members regarding this Agreement and their participation in this Agreement.

 3. Within twenty-one (21) days of the Court's Approval Order becoming a final, non-appealable order, the Administrator shall send via First Class U.S. Mail all Notice Packets to Putative Collective Members along with an enclosed, postage-paid return envelope, and shall send Notice Packets via Email to those Putative Collective Members for whom Ascension provided email addresses. Each Consent to Join and Release Form shall include a unique number or other mark identifying the Putative Collective Member to whom it was sent. If any Notice Packet is returned as undeliverable to a Putative Collective Member, the Administrator shall promptly attempt to locate such Putative Collective Member one time through the United States Postal Service's National Change of Address database and/or an electronic search using the Social Security number and/or former address of that person, and shall promptly re-mail the Notice Packet to any updated address obtained

therefrom via First Class U.S. Mail. If any Putative Collective Member contacts the Administrator and/or Plaintiffs' Counsel requesting a Notice Packet be re-sent, then upon confirming the postal address and/or email address, each such Putative Collective Member shall be entitled to have a Notice Packet resent once either via U.S. Mail or email. Within thirty (30) days into the Notice Period, the Administrator shall send an identical reminder Notice Packet, by mail and email, to any individual who has not submitted a Consent to Join and Release Form.

4.      In order for a Putative Collective Member to receive any monetary proceeds from the settlement, the Administrator must receive his/her properly-executed and completed Consent to Join and Release Form by mail, e-mail, or facsimile within sixty (60) days (or, if sent to the Administrator by First Class U.S. Mail, postmarked no later than sixty (60) days) after the date the Notice Packets were initially mailed to Putative Collective Members (the "Opt-in Period"), unless otherwise agreed by the Settling Parties.

5.      The Putative Collective Members who timely return completed and executed Consent to Join and Release Forms will be considered "Qualified Claimants" who are entitled to receive a payment from the Net Fund (as defined in paragraph III.F.1 below).

6.      In the event that, before the Opt-in Period ends, Plaintiffs' Counsel or the Administrator becomes aware that a Putative Collective Member did not receive the Notice Packet or misplaced the Notice Packet, the Administrator shall send a substitute Notice Packet to such individual, as described in Section III.A.3.

7.      To the extent that any mailed Notice Packet was not received by a Putative Collective Member and/or is returned as undeliverable within the Opt-in Period, such person shall have until thirty (30) days from the re-mailing of the Notice Packet to return his or her properly-executed and completed Consent to Join and Release Form ("Re-mailing Opt-in Period"). For such individuals, the Consent to Join and Release Form must be received by the Administrator and postmarked, or received by e-mail or facsimile, by the end of the Re-mailing Opt-in Period.

8.      In the event that any Consent to Join and Release Form is timely submitted but does not contain sufficient information, the Administrator shall send the Putative Collective Member a letter ("Cure Letter") via First Class U.S. Mail (with an included postage-paid return envelope) requesting the information that was not provided, and giving the individual fifteen (15) days from the mailing of the Cure Letter or until the end of the Opt-in Period, whichever is later ("Cure Opt-in Period"), to return a properly completed Consent to Join and Release Form. Any Putative Collective Member who fails to respond timely to a Cure Letter shall not be considered a Qualified Claimant.

9.      Within seven (7) days after the close of the later of the Opt-in Period, any open Cure Opt-in Period, and any open Re-mailing Opt-in Period, the Administrator shall provide to Counsel for the Settling Parties: (a) a list of Qualified Claimants, (b) electronic copies of all timely received and completed Consent to Join and Release Forms, (c) a register listing all Qualified Claimants and the payment amount owed to each Qualified Claimant, (d) a calculation of the total amount needed to cover all payments for Qualified Claimants and the employer's share of payroll taxes, and (e) a calculation of the total amount that Ascension is required to pay into the Settlement

Fund. Ascension shall promptly provide Social Security numbers to the Administrator for all Qualified Claimants.

10. At the conclusion of the settlement administration process, the Administrator shall maintain an electronic copy of all Consent to Join and Release Forms received from Qualified Claimants and shall provide the original Consent to Join and Release Forms to Ascension's Counsel. Also, at the conclusion of the settlement administration process, the Administrator shall provide Counsel for the Settling Parties a register listing all Qualified Claimants, any known contact information, and the payment amount made to each Qualified Claimant.

**B. <u>Ascension's Payment Obligations.</u>**

1. In consideration for the dismissal with prejudice of the Litigation as well as the releases of claims effected by this Agreement and other good and valuable consideration, Ascension shall pay a maximum of up to Sixteen Million Four Hundred Thirty-Five Thousand Dollars And Zero Cents ($16,435,000.00) (the "Gross Fund").

2. Subject to the terms of this Agreement, the Gross Fund is inclusive of all payments for:

a. All settlement amounts to be paid to the Qualified Claimants, or their respective authorized legal representatives;

b. The Service Payment (as defined in paragraph III.F.3 below);

c. All attorneys' fees ("Attorneys' Fees") and costs and litigation expenses ("Litigation Costs"), including those in connection with securing Court approval of this Agreement, the claims process, and implementing this Agreement;

d. All fees, expenses, and costs of the Administrator related directly or indirectly to its duties under this Agreement and any other related duties ("Settlement Administration Costs"); and

e. The Qualified Claimants' shares of applicable federal, state, and local taxes required to be withheld from their settlement amounts.

3. The Gross Fund shall be the maximum that Ascension shall pay pursuant to this Agreement (with the exception of its own attorneys' fees and the employer's share of any payroll taxes in connection with payments hereunder).

**C. <u>Timing of Payment to Settlement Fund.</u>**

1. Within thirty (30) days of the Court's Approval Order becoming a final, non-appealable order, Ascension shall pay by wire transfer to the Qualified Settlement Fund established by the Administrator an amount sufficient to fund: (a) the Attorneys' Fees; (b) Litigation Costs; (c) Service Payment; and (d) Settlement Administration Costs. Within thirty (30) days after the Administrator provides Counsel for the Settling Parties with the information described above in

paragraph III.A.9, Ascension shall pay by wire transfer to the Qualified Settlement Fund established by the Administrator an amount sufficient to fund: (e) all payments to Qualified Claimants; and (f) the employer's share of payroll taxes.

2.     Within seven (7) days after Ascension deposits into the Settlement Fund the (a) the Attorneys' Fees; (b) Litigation Costs; (c) Service Payment; and (d) Settlement Administration Costs described above in paragraph III.C.1, the Administrator shall:

a.     Retain the Settlement Administration Costs;

b.     Mail via First Class U.S. Mail the Service Payment to Named Plaintiff; and

c.     Pay to Plaintiffs' Counsel by wire transfer the Attorneys' Fees and Litigation Costs.

3.     Within seven (7) days after Ascension deposits into the Settlement Fund (a) all payments to Qualified Claimants; and (b) the employer's share of payroll taxes described above in paragraph III.C.1, the Administrator shall:

a.     Mail the Individual Payments (as defined below) via First Class U.S. Mail to the last known address of each Qualified Claimant or such other address provided by the Qualified Claimant to the Administrator.

### D.  Settlement Claims Administration

1.     Selection of Administrator. Counsel for the Settling Parties have jointly selected and agreed that the Administrator for this Agreement shall be CPT Group, Inc.

2.     Administrator Responsibilities. The Administrator shall be responsible for: (a) establishing the Settlement Fund; (b) determining and finalizing the calculations of the Individual Payments and tax withholding amounts for the Qualified Claimants, as applicable; (c) preparing, printing and disseminating to the Putative Collective Members the Notice Packet and return envelope; (d) providing the Settling Parties with any information related to the settlement upon request, except that Plaintiffs' Counsel shall not receive contact information for a Putative Collective Member unless that Putative Collective Member has contacted Plaintiff's Counsel directly or consented to become a Qualified Claimant; (e) copying Counsel for the Settling Parties on material correspondence and promptly notifying such counsel of any material requests or communications made by any Settling Party or Putative Collective Member who receives a Notice Packet; (f) receiving and reviewing the Consent to Join and Release Forms submitted by Putative Collective Members to determine sufficiency of information provided and eligibility for payment; (g) determining the final settlement payment for each Qualified Claimant in accordance with this Agreement; (h) mailing the settlement checks to Qualified Claimants; (i) wiring to Plaintiffs' Counsel's the payments for Attorneys' Fees and Litigation Costs, and mailing the Service Payment and settlement payments in accordance with this Agreement and Approval Order; (j) paying all payroll tax obligations of Ascension in accordance with applicable law and this Agreement; (k) issuing W-2 and 1099 Forms for and reporting to the appropriate taxing authorities all amounts paid to Qualified Claimants, and separately issuing a 1099

Form to Plaintiffs' Counsel for amounts paid to them for attorneys' fees; (l) ascertaining current address and addressee information for each Notice Packet returned as undeliverable; (m) referring to Plaintiffs' Counsel all inquiries by Putative Collective Members that the Administrator cannot resolve and/or which involve matters not within the Settlement Claim Administrator's duties specified herein; (n) responding to inquiries of Plaintiffs' Counsel or Ascension's Counsel; (o) promptly apprising Counsel for the Settling Parties of the activities of the Administrator; (p) maintaining adequate records of its activities, including the date of the mailing of the Notice Packets and receipt of Consent to Join and Release Forms, returned mail and other communications and attempted written or electronic communications with Putative Collective Members; (q) confirming in writing to Counsel for the Settling Parties its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (r) if necessary, executing a declaration for submission to the Court in support of the Settling Parties' motion for settlement approval; and (s) such other tasks as called for by this Agreement, ordered by the Court, or on which the Settling Parties agree.

3. <u>Settlement Fund Fees and Expenses.</u> All fees, expenses, and costs of the Administrator related directly or indirectly to the Settlement Fund (as defined in paragraph III.E.1 below), including but not limited to all fees, expenses, and costs in connection with notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Settlement Fund and tax treatment and tax reporting of awards to Qualified Claimant, shall be paid from the Settlement Fund. Such fees, expenses, and costs shall not exceed **One Hundred Twenty Thousand** dollars and Zero cents ($120,000.00) without the express authorization of the Settling Parties.

4. <u>Reporting by Administrator.</u> Throughout the period of claims administration, the Administrator shall provide such reports to the Settling Parties upon request by either Settling Party, regarding the status of the mailing of the Notice Packets to Putative Collective Members, the claims administration process, the receipt of Consent to Join and Release Forms, distribution of the settlement checks, and any other aspect of the claims administration process.

### E. **Creation and Implementation of a Qualified Settlement Fund**

1. <u>Establishing the Qualified Settlement Fund.</u> The Gross Fund shall be deposited in an account titled Ascension Settlement Fund (the "Settlement Fund"), intended by the Settling Parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.* The Settling Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Settling Parties agree to any relation-back election required to effectuate such treatment as of the earliest possible date.

2. <u>Administering the Settlement Fund.</u> The Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution thereof, including the handling of tax-related issues and payments.

3. <u>Tax Withholding and Reporting.</u>

a. <u>Employment Taxes.</u> The Administrator shall allocate fifty percent (50%) of the total amount paid to each Qualified Claimant as back pay wages (to be reported on an

Internal Revenue Service ("IRS") Form W-2) and fifty percent (50%) as liquidated damages and/or other non-wage compensation (to be reported on an IRS Form 1099). The Administrator shall be responsible for withholding and timely remitting and reporting all taxes to the appropriate taxing authorities. The Administrator shall determine the proper tax reporting treatment for Court-approved Service Payments.

4.    Indemnification. The Settling Parties agree that their services agreement with the Administrator shall provide that the Administrator shall indemnify the Settling Parties, their affiliates, and their respective directors, officers, employees, contractors, agents, and other representatives for any penalty or interest arising out of an incorrect calculation of a settlement share, that is a calculation that is calculated differently from the methods set for in this Settlement Agreement, Paragraph III.F, and approved by the Settling Parties.

5.    Communication with Ascension and Plaintiffs' Counsel. Ascension, Ascension's Counsel, and Plaintiffs' Counsel are authorized to communicate directly with the Administrator to expedite the settlement administration process. Counsel for the Settling Parties shall have full access to all information relating to claims administration, except as explicitly set forth otherwise herein.

6.    Reserve Fund. The Settling Parties agree that the Gross Fund includes a **One Million Dollar** ($1,000,000) reserve to negotiate Future Claims, to the extent future claims arise prior to November 9, 2025. For purposes of this Agreement, "Future Claims" means any individuals that claim they should have, but did not, receive notice of the right to opt into this Settlement and for whom Ascension agrees to pay out such claims as part of this Agreement. The Reserve Fund shall be funded upon settlement of any Future Claim that arises before November 9, 2025.

**F.    Allocation of the Settlement Fund**

1.    Net Fund. The "Net Fund" means the remainder of the Gross Fund after deductions for the amount approved by the Court to be paid for Service Payment; Attorneys' Fees and Litigation Costs; and Settlement Administration Costs.

2.    Allocation of Net Fund. The Named Plaintiff and all Putative Collective Members shall be allocated a payment from the Net Fund, pursuant to the following allocation formula:

a.    Named Plaintiff and each Putative Collective Member shall be assigned one (1) point for each workweek worked in a qualifying position between November 9, 2022 and November 9, 2024.

b.    The settlement allocations calculations shall be based on the chart of Named Plaintiff's and Putative Collective Members' total number of workweeks worked in a qualifying position between November 9, 2022 and November 9, 2024 (described above in paragraph III.A.1). In the case of a dispute over a Putative Collective Member's dates of employment or workweeks worked, Ascension's records shall control and shall have a rebuttable presumption of correctness. In the event of any dispute over a Putative Collective Member's late submission of a claim, the Settling Parties shall meet and confer in good faith to resolve the dispute.  If they are unable to reach an

agreement, they shall engage the services of Dennis Clifford to decide the dispute.

           c.      To calculate each Named Plaintiff's and Putative Collective Member's proportionate share of the Net Fund, the Administrator shall:

           (i)      Add all points for Named Plaintiff and all Putative Collective Members together to obtain the "Total Denominator";

           (ii)      Divide the number of points for Named Plaintiff and each Putative Collective Member by the Total Denominator to obtain Named Plaintiff's and each Putative Collective Member's "Portion of the Net Fund"; and

           (iii)      Multiply Named Plaintiff's and each Putative Collective Member's Portion of the Net Fund by the total amount of the Net Fund to determine the amount of the payment to Named Plaintiff and each Putative Collective Member, which is each individual's "Individual Payment."

           (iv)      The sum of the Individual Payments for Named Plaintiff and Putative Collective Members shall equal the Net Fund. Named Plaintiff and each Putative Collective Member shall be advised of his/her respective Individual Payment in such person's Notice Packet.

           d.      The Individual Payments shall be paid to the Qualified Claimants. Any amounts of the Net Fund not claimed by a Qualified Claimant shall revert to Ascension.

           3.      <u>Service Payment.</u> From the Gross Fund, the Settling Parties agree to a service payment of **Ten Thousand Dollars and Zero Cents** ($10,000.00) for Named Plaintiff, as payment for her involvement in commencing and litigating the claims asserted in the Litigation and resolved in this Agreement (the "Service Payment").

           4.      <u>Attorneys' Fees and Costs Amounts</u>. The Settling Parties agree to an award of Attorney Fees, expenses, and costs of Six Million, Five Hundred Seventy-Four Thousand and Zero Cents ($6,574,000.00),, which were negotiated separately from the damages fund negotiations. In addition, the Settling Parties agree to a reimbursement from the Gross Fund of Plaintiff's Counsel's Litigation Costs in the amount of Twenty-Four Thousand Six Hundred Forty-Seven Dollars and One Cent ($24,647.01). Payment of such attorneys' fees, expenses, and costs to Plaintiffs' Counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of any and all obligations by Ascension to pay any person, attorney or law firm for attorneys' fees, expenses or costs incurred on behalf of Qualified Claimants on claims relating to the subject matter of this Agreement. The Administrator shall report the payment of these fees, expenses and costs to Plaintiffs' Counsel on an IRS Form 1099. The Settling Parties shall mutually cooperate and present to the Court such information as may be reasonably necessary and/or requested by the Court in connection with any application by Plaintiffs' Counsel for an award of Attorneys' Fees and/or Litigation Costs.

### G. **Payments to Qualified Claimants**

       1.     <u>Timing of Payments to Qualified Claimants.</u> The Settlement Administrator shall make the payments set forth in paragraph III.C.1.

       2.     <u>Tax Advice.</u> Named Plaintiff, on behalf of herself and the Putative Collective Members, acknowledge and agree that she has not relied upon any advice from Ascension or Plaintiffs' Counsel as to the taxability of the payments received pursuant to this Agreement.

       3.     <u>Negotiation of Settlement Checks</u>. Qualified Claimants shall have one hundred and twenty (120) days after the date on the settlement checks (the "Check Issuance Date") in which to negotiate the checks. If any Qualified Claimant does not execute, deposit, or otherwise negotiate his or her settlement check within that period, the check shall be void.

       4.     <u>Remaining Funds</u>. Any funds remaining in the Qualified Settlement Fund after payment to/of: (a) all Qualified Claimants who timely negotiate their settlement checks; (b) the Service Payment recipient as approved by the Court; (c) all Attorneys' Fees and Litigation Costs; and (d) all Settlement Administration Costs, including all costs in connection with the Settlement Fund including, but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Named Plaintiff and Qualified Claimants, as approved by the Court, shall revert to Ascension and shall be returned to Ascension thirty (30) days after the close of the 120-day period to negotiate settlement checks.

## IV. **RELEASE**

    A.    **Release By Qualified Claimants.** By executing a Consent to Join and Release Form and receiving a settlement payment, the Qualified Claimants shall release Ascension and its current and former owners, officials, directors, officers, shareholders, affiliates, subsidiaries, agents, employee benefit plans, plan administrators, representatives, servants, insurers, employees, former employees, attorneys, parents, divisions, branches, units, successors, predecessors, and assigns (collectively the "Released Parties") from: any and all federal and state wage and hour claims and wage payment claims that accrued between November 9, 2022 and November 9, 2024, including, without limitation, all federal Fair Labor Standards Act claims, all state and federal claims for unpaid overtime or straight time wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

    B.    **General Release of Known and Unknown Claims By Named Plaintiff**. In addition to the claims released as set forth in paragraph IV.A above, Named Plaintiff, in exchange for accepting and receiving an approved Service Payment pursuant to paragraph III.F.3 above, hereby releases and forever discharges the Released Parties of and from any and all claims, whether in law or in equity, which Named Plaintiff asserts or could assert, whether known or unknown, at common law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever, including without limitation, claims under Title VII of the Civil Rights Act of 1964, the federal Equal Pay Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993 (the "FMLA"), the Employee Retirement Income Security Act of 1974, the Racketeer Influenced and Corrupt Organizations Act, the Financial Reform

Recovery and Enforcement Act of 1989, Section 1981 of Title 42 of the United States Code, the federal Worker Adjustment and Retraining Notification (WARN) Act, The Pregnant Worker's Fairness Act ("PWFA"), Texas Commission on Human Rights Act, Texas Health and Safety Code, Texas Payday Act, Texas Labor Code, Texas Civil Practices and Remedies Code, any other federal, state, or city laws concerning workplace rights or obligations or payment of wages, claims for violation of privacy rights, claims for violation of civil rights, claims for denial of equal rights, discrimination, wrongful termination, retaliation, breach of contract, equitable remedies, interference with advantageous relations, all tort claims, and all claims that were or could have been raised by Named Plaintiff in the Litigation or which arose prior to the date the Named Plaintiff signs this Agreement with respect to any event, matter, claim, damage or injury arising out of Named Plaintiff's employment with Ascension.

## V.    **NOTICES**

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered by first-class mail or e-mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Plaintiffs:

>   Andrew W. Dunlap
>   Josephson Dunlap LLP
>   11 Greenway Plaza, Suite 3050
>   Houston, TX 77046
>   Phone: 713.352.1100
>   Fax: 713.352.3300
>   Email: adunlap@mybackwages.com

>   Alyssa White
>   Josephson Dunlap LLP
>   11 Greenway Plaza, Suite 3050
>   Houston, TX 77046
>   Phone: 713.352.1100
>   Fax: 713.352.3300
>   Email: awhite@mybackwages.com

Counsel for Ascension:

>   Eric R. Magnus
>   Jackson Lewis P.C.
>   1155 Peachtree Street NE
>   Suite 1000
>   Atlanta, GA 30309-3600
>   Direct: (404) 525-8200
>   Magnuse@jacksonlewis.com

Tyler White
Jackson Lewis, P.C.
501 Riverside Avenue
Suite 902
Jacksonville, FL 32202
Direct: (904) 638-2665
Tyler.White@jacksonlewis.com

## VI.    REPRESENTATION BY COUNSEL

The Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed voluntarily, without duress, and with the consent and advice of counsel.

## VII.    NO ADMISSION OF LIABILITY

Ascension enters into this Agreement to avoid further expense and disruption to its business. The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of the Litigation is disputed by Ascension. This Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Settling Parties to this Agreement. The Settling Parties further acknowledge and agree that this Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity. Neither this Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Agreement.

## VIII.    MODIFICATION OF AGREEMENT

This Agreement may not be modified or amended except in writing, signed by the affected Settling Parties or the duly authorized respective counsel for the Settling Parties, and as approved by the Court with respect to material modifications or amendments.

## IX.    NO PUBLICITY

**A.**    The Settling Parties and their Counsel agree that they will not disseminate, advertise, and/or publicize, or cause or permit to be disseminated, advertised, and/or publicized the terms or contents of this Agreement, including but not limited to communications on any websites, social media platforms such as Facebook, Twitter, LinkedIn, or Glassdoor, or blogs, or by text or email or other electronic means. The Settling Parties and their Counsel expressly agree that they will not initiate, directly or through others, or take any action whatsoever to contact the media (which includes but is not limited to any representatives of any newspapers, television stations, radio stations, magazines, or other publications, or any other print or electronic media), or to generate publicity in connection with this matter and its settlement.

**B.**    Notwithstanding the foregoing, the Settling Parties and their Counsel shall have the right to disclose this Agreement to their spouses (if any), as may be permitted and/or required under

11

federal or state tax and/or securities laws, under generally accepted accounting principles, and under the ethical rules governing the professional conduct of attorneys, and may disclose the Agreement in filings in any court. Nothing herein shall limit the ability of Plaintiffs' Counsel and Named Plaintiff to communicate with Putative Collective Members or their representatives.

C.    Nothing in this Agreement shall prohibit Counsel for the Settling Parties from disclosing information concerning this Agreement to the Administrator and its employees and agents for the purpose of effectuating the terms of this Agreement. The Settling Parties may also disclose information concerning this Agreement to their respective counsel and tax, audit, and legal advisors.

## X.    CONSTRUCTION AND INTERPRETATION

A.    **Entire Agreement.** This Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter contained herein and shall supersede all prior and contemporaneous negotiations between the Settling Parties. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly or presumptively for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement, or any specific term or condition thereof. The Named Plaintiff and Ascension participated mutually in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither the Named Plaintiff nor Ascension may claim that any ambiguity in this Agreement should be construed presumptively against the other.

B.    **No Reliance on Representations or Extrinsic Evidence.** Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict its terms. In entering into this Agreement, the Settling Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

C.    **Controlling Law.** This Agreement shall be subject to, governed by, construed, enforced and administered in accordance with the laws of the State of Texas, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws.

D.    **No Assignment.** Plaintiffs' Counsel and the Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action. A similar representation shall be included on the Consent to Join and Release Form sent to the Putative Collective Members with the Notice.

## XI.    COUNTERPARTS

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

## XII.    BINDING EFFECT

This Agreement is binding upon and shall inure to the benefit of the Settling Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of Ascension as well as all Released Parties and all persons acting by, through, under, or in concert with any of them. Also without limiting the foregoing, this Agreement shall be binding upon the spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors and offspring of all Qualified Claimants.

## XIII.    ATTORNEYS' FEES, COSTS AND EXPENSES

Except as otherwise specifically provided herein, the Settling Parties and all Qualified Claimants shall bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of this litigation and shall not seek reimbursement thereof from any of the Settling Parties. However, in the event of any dispute to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of their reasonable attorneys' fees and costs from the non-prevailing party.

## XIV.    AUTHORITY OF COUNSEL

**A.    Facsimile, Electronic, and E-mail Signatures.** Any Settling Party may execute this Agreement by signing or by e-signature, on the designated signature block below and transmitting that signature page through their respective counsel, via facsimile, e-mail, or other electronic means to counsel for the other Settling Party. Any signature made and transmitted by facsimile, e-signature, or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Settling Party whose counsel transmits the signature page by facsimile, e-signature or e-mail.

**B.    Warranty of Counsel.** Plaintiffs' Counsel warrant and represent that they are expressly authorized by Named Plaintiff to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms. Ascension's Counsel warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by Ascension pursuant to this Agreement in order to effectuate its terms.

## XV.    CONTINUING JURISDICTION

The Settling Parties hereto agree to request that the United States District Court for the District of Texas, Midland Division retain continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement; to supervise the administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from or related to this Agreement or the issues of law and facts asserted in the Litigation.

## XVI.    NON-SEVERABILITY

**A.**    If any provision of this Agreement is held by a court of competent jurisdiction or arbitrator to be void, unlawful, or unenforceable, the Settling Parties agree to meet and confer in good faith to determine the appropriate steps to resolve any issues.

**XVII.  BONA FIDE DISPUTE**

The Parties acknowledge and agree that this Agreement fully and finally resolves a bona fide dispute between them regarding, among other things, the hours worked under the FLSA and whether Plaintiffs are due additional compensation under the FLSA or any other wage and hour law and, if so, the amount due.

**XVIII. <u>REQUIREMENT OF COURT APPROVAL AND EFFECT OF NON-APPROVAL</u>**

This Agreement shall not take effect or become enforceable unless and until it is approved by the Court. In the event that the Agreement is not approved by the Court for any reason in substantially the form submitted by the Settling Parties, the Settling Parties shall attempt in good faith to address any concerns raised by the Court and submit a revised settlement agreement for approval. If the Court denies the approval of a revised settlement agreement and fails to enter Judgment in accordance with this Agreement, or the Agreement otherwise does not become effective, then: (A) this Agreement shall have no force or effect, other than with respect to (1) this Paragraph XVIII, and (2) Ascension's denial of liability in accordance with Paragraph VII; (B) neither this Agreement, nor any related papers or orders, nor the negotiations leading to this Agreement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (C) none of the Settling Parties shall be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Named Plaintiff's claims or any other issue; and (D) the Litigation shall proceed and/or be renewed as if no settlement had been attained.

SIGNATURES ON THE FOLLOWING PAGE

ACCEPTED AND AGREED:

| | |
|---|---|
| DATED: 9/18 2025 | Ascension Health<br><br>By: _____<br><br>Its:  EVP & General Counsel |
| DATED: 09/12 , 2025 | Stephanie Nugen<br><br>_Stephanie Nugen_<br>_____ |

**APPROVED BY COUNSEL FOR THE SETTLING PARTIES** on <mark>September 12, 2025</mark>.

Counsel for Plaintiffs:

Andrew W. Dunlap
Josephson Dunlap LLP
11 Greenway Plaza, Suite 3050
Houston, TX 77046
Phone: 713.352.1100
Fax: 713.352.3300
Email:adunlap@mybackwages.com

Alyssa White
Josephson Dunlap LLP
11 Greenway Plaza, Suite 3050
Houston, TX 77046
Phone: 713.352.1100
Fax: 713.352.3300
Email: awhite@mybackwages.com

Counsel for Ascension:

Eric R. Magnus
JACKSON LEWIS P.C.
1155 Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309-3600
(404) 525-8200
magnuse@jacksonlewis.com

Tyler White
Jackson Lewis, P.C.
501 Riverside Avenue
Suite 902
Jacksonville, FL 32202
Direct: (904) 638-2665
Tyler.White@jacksonlewis.com

4921-2283-0170, v. 1

EXHIBIT   A

# NOTICE OF SETTLEMENT OF COLLECTIVE ACTION LAWSUIT AND OPPORTUNITY TO MAKE A CLAIM

### THIS NOTICE MAY AFFECT YOUR RIGHTS: PLEASE READ IT CAREFULLY

*Re:    Stephanie Nugen, Individually and on Behalf of Others Similarly Situated v. Ascension Health, Case No. 7:25-cv-00294, United States District Court Western District of Texas.*

### IMPORTANT NOTICE REGARDING UNPAID OVERTIME SETTLEMENT WITH ASCENSION HEALTH

**To:**    «First_Name» «Last_Name»

**Re:**    **Your Right to Overtime Pay from Settlement with Ascension Health**

**AMOUNT OF THE ESTIMATED SETTLEMENT PAYMENT:$_____**

### WHY AM I GETTING THIS NOTICE?

You received this Notice because Defendant Ascension Health's ("Defendant" or "Ascension") records indicate that, at some point during the time period of November 9, 2022 through November 9, 2024 (the "FLSA Covered Period"), you worked for Defendant as a patient-facing employee and were subject to an automatic meal break deduction. As such, you are a "Putative Collective Member."

A settlement of the above captioned collective action lawsuit (the "Nugen Action"), filed in the United States District Court for the Western District of Texas (Midland Division) (the "Court") by Plaintiff Stephanie Nugen ("Plaintiff"), has been reached by the parties and approved by the Court. The purpose of this Notice is to describe the allegations in the Nugen Action and to inform you of the terms of the settlement and your rights and options in connection with the settlement. **Because your rights may be affected, it is extremely important that you read this Notice carefully.**

**In order to receive money under the settlement, you must sign and timely submit the attached Consent to Join and Release Form to CPT Group, Inc. ("CPT") a qualified third party settlement administrator, at the address, fax number, or e-mail address listed on the attached Consent to Join and Release Form. Your Consent to Join and Release Form will only be deemed timely submitted if it is postmarked or received by e-mail, fax, or electronic signature no later than _____ \_\_, 2025.**

### WHY SHOULD I READ THIS NOTICE?

The settlement of the Nugen Action will result in, among other things: (a) a distribution of money to named Plaintiff, opt-in Plaintiffs to the Nugen Action, and Putative Collective Members who elect to participate in the settlement by timely submitting a Consent to Join and Release Form ("Qualified Claimants"); (b) dismissal of the Nugen Action and the release of certain claims against Defendant and their related entities; and (c) an award of attorneys' fees and costs to counsel for Plaintiff and Putative Collective Members in the Nugen Action. This Notice is designed to inform you of the details of the settlement, and how you can participate in this settlement if you elect to do so.

## WHAT IS A COLLECTIVE ACTION?

A collective action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more plaintiffs commence the lawsuit on behalf of themselves and others who may later choose to opt into the action as party plaintiffs.

## WHAT IS THIS LAWSUIT ABOUT?

On June 24, 2025, Plaintiff filed a collective action lawsuit against Defendant in the United States District Court for the Western District of Texas (Midland Division). Plaintiff alleges Defendant failed to pay her and other patient-facing employees for all time worked, including for missed meal periods. Plaintiff further alleges Ascension failed to pay time and a half for all hours worked over forty in a week, in violation of the Fair Labor Standards Act ("FLSA"). The Nugen Action seeks damages for these unpaid wages, including overtime wages, liquidated damages, attorneys' fees, and costs.

Ascension denies any liability or wrongdoing of any kind associated with the claims alleged in the Nugen Action. Defendant contends that it complied with the FLSA and all other applicable laws, properly paid Plaintiff and the Putative Collective Members, and does not owe any unpaid wages or other damages.

After good-faith negotiations, Plaintiff and Defendant agreed to settle the Nugen Action pursuant to the terms and conditions of a confidential Settlement Agreement and Release ("Settlement Agreement"). The settlement represents a compromise regarding disputed claims, considering the risks and uncertainties to each side of continued litigation. The parties and their counsel have determined that the settlement is fair, reasonable, and adequate, and is in the best interests of the parties and the Putative Collective Members.

On _____, 2025, the Court approved the settlement which prompted this Notice. The Court has made no ruling on the merits of Plaintiff's claims and has determined only that the settlement is appropriate under federal law.

## WHAT DOES THE SETTLEMENT PROVIDE?

Under the terms of the settlement, Defendant has preliminarily agreed to pay an amount that will allow you to recover approximately $_____. This amount is based on the length of time you performed work with Defendant during the FLSA Covered Period, your rate of pay, and your average estimated hours worked per week.

## NO PUBLICITY

Under the terms of the Settlement Agreement, the terms and amount of your settlement may not be disclosed to anyone other than (a) your spouse; (b) professionals engaged to provide you legal advice or tax advice regarding the taxation of this payment; and (c) if required by legal process. If you disclose the terms or amount of this settlement to your legal or tax professional, they must first agree to keep the terms and amounts of this settlement confidential.

## HOW DO I MAKE A CLAIM AND GET A PAYMENT?

In order to participate in the settlement and receive your settlement payment, you must complete and timely submit a Consent to Join and Release Form. A copy of your Consent to Join and Release Form is attached to this Notice.

In order to receive money under the settlement, you must sign and timely submit the attached Consent to Join and Release Form to CPT at the address, fax number, or e-mail address listed on the Consent to Join and Release Form. Your Consent to Join and Release Form will only be deemed timely submitted if it is electronically signed, postmarked, email-received, or fax-received no later than _____, 2025.

## WHEN WILL I RECEIVE MY SETTLEMENT PAYMENT?

You will likely receive your settlement payment within approximately 180 days of submitting your Consent to Join and Release Form, provided there are no unforeseen delays.

## WHAT AM I GIVING UP IF I PARTICIPATE IN THIS SETTLEMENT?

In order to participate in the settlement, you must agree to the release of claims described in your Consent to Join and Release Form. By agreeing to the release and submitting the Consent to Join and Release Form, you are giving up your right to bring certain claims.

## WHAT IF I DO NOT WANT TO PARTICIPATE IN THE SETTLEMENT?

If you want to exclude yourself from the settlement, do not submit a Consent to Join and Release Form. Only persons who submit a Consent to Join and Release Form will be bound by the settlement. However, if you do not timely submit a Consent to Join and Release Form, you will not receive any payments under the settlement in the Nugen Action.

## WHERE CAN I FIND ADDITIONAL INFORMATION?

This Notice is a summary of the basic terms of the settlement. For the precise terms and conditions of the settlement, you may refer to the detailed Settlement Agreement, which may be requested from CPT at the contact information listed in the Consent to Join and Release Form. If you have any questions, please feel free to contact Class Counsel, Josephson Dunlap, LLP, at 713-352-1100, or by email at info@mybackwages.com.

**PLEASE DO NOT WRITE OR CALL THE COURT FOR INFORMATION REGARDING THIS SETTLEMENT OR THE CLAIMS PROCESS.**

## CONSENT TO JOIN AND RELEASE FORM

*Stephanie Nugen, Individually and on Behalf of Others Similarly Situated v. Ascension Health, Case No. _____,* **In the United States District Court for the Western District of Texas.**

Printed Name:
_____

Address:
_____

Daytime Telephone Number:
_____

E-mail Address:
_____

You received the Notice of Settlement of Collective Action Lawsuit and Opportunity to Make a Claim regarding the Nugen Action because you are eligible to participate in the collective action settlement of the Nugen Action pursuant to the Order of the United States District Court for the Western District of Texas, Midland Division, dated _____ __, 2025. Specifically, you are entitled to receive a settlement amount of $_____ (the "Settlement Award").

To receive the Settlement Award, you must completely fill out and sign this Consent to Join and Release Form and return it by e-mail, fax, or pre-paid mail. The Consent to Join and Release Form must be received by e-mail or fax no later than _____ __, 2025. If you wish to participate, please return the completed Consent to Join and Release Form by mail, fax, or e-mail to: [contact info for CPT Group, Inc.]

If you return the form on time, you will receive a check in approximately 180 days and will be bound by the Settlement Agreement and Release ("Settlement Agreement") entered into by Plaintiff Stephanie Nugen ("Plaintiff"), on behalf of herself and all Putative Collective Members, on the one hand, and Defendant Ascension Health ("Defendant" or "Ascension"), and all related entities, on the other hand.

If you fail to submit your Consent to Join and Release Form by _____ __, 2025, you will not receive any money in connection with the settlement of the Nugen Action.

By your signature on this Consent to Join and Release Form, you understand and agree that, other than the Settlement Award, you are entitled to no other monies, benefits, or other consideration from Defendant under this Consent to Join and Release Form or the Settlement Agreement.

**Release of Your Claims**

In return for the Settlement Award, I understand and agree that, by signing and submitting this Consent to Join and Release Form, and otherwise participating as a Qualified Claimant (as defined in

the Settlement Agreement), I am releasing Ascension and its current and former owners, officials, directors, officers, shareholders, affiliates, subsidiaries, agents, employee benefit plans, plan administrators, representatives, servants, insurers, employees, former employees, attorneys, parents, divisions, branches, units, successors, predecessors, and assigns (collectively the "Released Parties") from: any and all federal and state wage and hour claims and wage payment claims that accrued between November 9, 2022 and November 9, 2024, , including, without limitation, all federal Fair Labor Standards Act claims, all state and federal claims for unpaid overtime or straight time wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

## No Publicity

In return for the Settlement Award, I agree to maintain the Settlement Agreement, this Consent to Join and Release Form, and the amount of the settlement payments and my individual Settlement Award as strictly confidential and covenant not to disclose the terms of the Settlement Agreement or this Consent to Join and Release Form to any other person or entity, except for purposes of seeking legal or tax professional advice, or under order of a lawfully issued subpoena.

## Acknowledgement, Consent, and Signature Page

By signing this Consent to Join and Release Form, I acknowledge and agree that: (i) I have received or I am entitled to receive a copy of the Settlement Agreement and Release ("Settlement Agreement") entered into in the action styled, *Stephanie Nugen, Individually and For Others Similarly Situated v. Ascension Health*, Civil Action No. 7:25-cv-00294, filed in the United States District Court for the Western District of Texas, Midland Division; (ii) my executed Consent to Join and Release Form is expressly made a part of the Settlement Agreement; (iii) in the event of a conflict between the Settlement Agreement and this Consent to Join and Release Form, the terms of the Settlement Agreement control over the terms of this Consent to Join and Release Form; (iv) I agree to be bound by the terms of the contingency fee agreement entered into by Plaintiff with Class Counsel; (v) I hereby consent to make a claim against Ascension Health to pursue my claims of unpaid overtime during the time that I worked for Defendant from November 9, 2022, through November 9, 2024; (vi) I designate the law firm and attorneys at Josephson Dunlap, LLP and Bruckner Burch PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering into the Settlement Agreement, and all other matters pertaining to the Nugen Action; and (viii) by filing this consent in the above-referenced Lawsuit, I will be bound by the judgment of the Court on all issues in this case and bound by the Settlement Agreement entered into in this Nugen Action.

I understand that this also means I am participating in the settlement of my claims in the Nugen Action, and as part of this settlement, I am releasing my claims as described above. I understand that by signing this document, I will be paid the Settlement Award only, as further described in the Settlement Agreement.

I further acknowledge that I have read and understand the terms of the Settlement Agreement and this Consent to Join and Release Form, and I am entering into the Settlement Agreement and this Consent to Join and Release Form knowingly, voluntarily, and with full knowledge of their significance, and that I am not relying on any information beyond the information set forth in the Settlement Agreement and this Consent to Join and Release Form.

2

Printed Name: _____ Signature: _____

Dated: _____